UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NEW ENGLAND GEN-CONNECT, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 14-cv-13530-IT |
| | * | |
| US CARBURETION, INC., and JOHN M. KELLER, | * | |
| | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

November 6, 2015

TALWANI, D.J.

I.  Introduction

Plaintiff New England Gen-Connect, LLC ("Gen-Connect") filed this action seeking a declaratory judgment of non-infringement and invalidity of United States Patent No. 8,448,924 entitled "Alternative-Fuel Inductor for Engines" (the "Patent").  Defendants US Carburetion, Inc. ("US Carb") and John M. Keller ("Keller") filed a Motion to Dismiss Amended Complaint [#21] in which Keller moved to dismiss for lack of personal jurisdiction and both Keller and US Carb moved to dismiss for lack of subject matter jurisdiction.  In the court's August 10, 2015 Memorandum & Order [#33], the court granted Keller's motion to dismiss for lack of personal jurisdiction and took under advisement US Carb's motion to dismiss for lack of subject matter jurisdiction.  For the reasons below, US Carb's motion to dismiss for lack of subject matter jurisdiction is DENIED.

II.  Factual Background

Gen-Connect manufactures and sells the Honda EU2000i propane kit.  Am. Compl. ¶¶ 13, 16 [#10].  On August 8, 2014, US Carb sent a letter to Gen-Connect asserting that US Carb is the owner of the Patent and that Gen-Connect's making and selling of its Honda EU2000i Propone Kit "infringes the Patent."  Am Compl. Ex. 1 [ #10-1] [hereinafter August 2014 Letter].  The letter stated "US Carb actively and aggressively enforces its valuable patent rights and considers this a very serious matter" and advised that Gen-Connect is "liable for all damages sustained by US Carb, including . . . possibly treble damages."  Id.  The letter went on to state that US Carb "hope[d] that the parties can resolve this matter reasonably without resorting to litigation," "it is not US Carb's intention or desire to initiate a litigation to resolve this matter," and "US Carb would like to work with [Gen-Connect] in good faith to resolve this matter in a fair and reasonable manner, without resorting to relief from the courts."  Id.  The letter closed by stating that if Gen-Connect did not respond to the letter within two weeks "we'll have no choice but to proceed with more drastic measures."  Id.

III.  Procedural History

On August 28, 2014, Gen-Connect filed this action seeking a declaratory judgment of non-infringement and invalidity of the Patent.  US Carb moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  US Carb attached to its motion a document entitled "Irrevocable Covenant Not to Sue, Conditioned upon Dismissal of Declaratory Judgment Claims."  Mot. Dismiss Am. Compl. Ex C [#21-3].  In the covenant, US Carb promises "not to bring any suit prior to December 31, 2017 for patent infringement by Gen-Connect."  Id.  US Carb further promises not to assert any claim of patent infringement based on Gen-Connect's (1) manufacture or sale of any product "prior to the date of this Covenant," or (2)

2

manufacture or sale "between now and December 31, 2017" of "any future product by Gen-Connect being identical to the product Gen-Connect currently sells." Id.

IV.   Discussion

US Carb asserts that there is no justiciable case or controversy between the parties under Article III and the Declaratory Judgment Act.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). "The phrase 'case of actual controversy' 'refers to the type of Cases and Controversies that are justiciable under Article III.'" Danisco U.S. Inc. v. Novozymes A/S, 744 F.3d 1325, 1329 (Fed. Cir. 2014) (quoting Sony Elecs., Inc. v. Guardian Media Techs., Ltd., 497 F.3d 1271, 1283 (Fed. Cir. 2007)); see also Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1335 (Fed. Cir. 2008).

For a case or controversy to exist under Article III, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests, real and substantial, and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Prasco, 537 F.3d at 1335-36 (internal quotation marks and citations omitted). "[T]here is no bright-line rule for determining whether an action satisfies the case or controversy requirement." Id. at 1336. "To the contrary, '[t]he difference between an abstract question and a controversy contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy.'" Id. (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). "Basically, the question in each case is whether the facts alleged, under

3

all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of such immediacy and reality to warrant issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Md. Cas. Co., 312 U.S. at 273).

US Carb offers two arguments in support of dismissal. First, US Carb argues that the August 2014 Letter did not create a justiciable controversy. "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1381 (Fed. Cir. 2007). "To establish the existence of a 'definite and concrete' dispute, more is required than 'a communication from a patent owner to another party, merely identifying its patent and the other party's product line.'" 3M Co. v. Avery Dennison Corp., 673 F.3d 1372, 1378-79 (Fed. Cir. 2012) (quoting Hewlett-Packard Co. v. Acceleron LLC, 587 F.3d 1358, 1362 (Fed. Cir. 2009)). On the other hand, if "a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support jurisdiction." Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 96 (1993) (emphasis in original); see SanDisk Corp., 480 F.3d at 1381 ("[W]here a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise . . . .").

Here, US Carb's August 2014 Letter identified the Patent, charged Gen-Connect with infringement, asserted that US Carb "actively and aggressively enforces its valuable patent rights," and imposed a two-week deadline for Gen-Connect to respond or US Carb would "proceed with more drastic measures." In considering all of the circumstances, the court

concludes that the August 2014 Letter gave rise to a case or controversy between the parties. See, e.g., Hewlett-Packard, 587 F.3d at 1362-63 (holding that case or controversy existed based on patentee's letters to the declaratory judgment plaintiff that identified the patent as "relat[ing]" to a specific product line, imposed a two-week deadline to respond, and insisted plaintiff not file suit); 3M Co., 673 F.3d at 1379. Although US Carb expressed a desire to avoid litigation, US Carb's conduct demonstrates "a preparedness and willingness to enforce its patent rights" despite this stated desire. See SanDisk Corp., 480 F.3d at 1382-83 (affirming existence of case or controversy despite patentee's statement that it had "no plan whatsoever to sue" where patentee's other conduct demonstrated "a preparedness and willingness to enforce its patent rights").

Second, US Carb argues that even if the August 2014 Letter created a justiciable controversy, US Carb's covenant not to sue extinguished the controversy. The offer of a covenant not to sue can, in certain circumstances, extinguish the controversy between the parties and divest the court of jurisdiction. See, e.g., Dow Jones & Co., Inc. v. Ablaise Ltd., 606 F.3d 1338, 1349 (Fed. Cir. 2010). "Whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 556 F.3d 1294, 1297 (Fed. Cir. 2009).

In Already, LLC v. Nike, Inc., 133 S. Ct. 721 (2013), the Supreme Court analyzed a covenant not to sue under the doctrines of mootness and voluntary cessation. Under these doctrines, a party's voluntary cessation of allegedly wrongful conduct does not render a case moot unless that party "show[s] that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Id. at 727 (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190 (2000)). In Already, the Court reasoned that trademark-holder Nike's irrevocable covenant not to sue constituted voluntary cessation of the

allegedly wrongful conduct (*i.e.* trademark enforcement efforts) for purposes of the declaratory judgment action. Id. The Court further reasoned that Nike met its burden of showing that it was "absolutely clear" that it "could not reasonably be expected to" resume its enforcement efforts against Already given the breadth of the covenant and the lack of evidence that Already had plans to engage in conduct that would fall outside the covenant. Id. at 729. Accordingly, the Court held that the covenant removed the controversy and mooted the case. Id. at 732.

Here, US Carb's covenant not to sue constitutes voluntary cessation of US Carb's patent enforcement efforts. However, unlike in Already, it is not "absolutely clear" that US Carb "could not reasonably be expected" to resume its enforcement efforts. US Carb's covenant is limited in duration; US Carb covenants not to sue before December 2017. Gen-Connect has expressed its intent to continue to manufacture and sell the accused product after December 2017. See Surreply 3-4 [#34] ("Gen-Connect has no intention whatsoever to stop selling their products. . . . In three years, both parties plan to still be selling the exact same products."). In light of Gen-Connect's plans to engage in conduct that would fall outside of the covenant, there remains a live controversy between the parties and the case is not moot. Compare Revolution Eyewear, 556 F.3d at 1298 (holding that covenant did not remove case or controversy where covenant covered past, but not future, sales of the accused product and declaratory judgment plaintiff had plans to engage in future sales of the accused product), with Already, LLC, 133 S. Ct. at 729 (holding that covenant removed case or controversy where plaintiff "did not assert any intent to design or market a shoe that would expose it to any prospect of infringement liability").

US Carb contends that Benitec Austl., Ltd. v. Nucleonics, Inc., 495 F.3d 1340 (Fed. Cir. 2007) supports dismissal of this case. In Benitec, Nucleonics had been developing a new drug and had not yet filed a new drug application with the Food and Drug Administration (FDA). Id.

6

at 1346. After Benitec accused Nucleonics of infringement, Nuceleonics brought claims against Benitec for a declaratory judgment of non-infringement. The Federal Circuit held that there was no controversy of "sufficient immediacy and reality" to support jurisdiction. Id. The court considered that Benitec had offered a covenant not to sue for any past infringing conduct. Id. at 1347. The court also considered that, moving forward, a statutory provision exempted from liability Nucleonics's drug-development activities prior to filing a new drug application with the FDA, and that Nucleonics did not intend to file an application until "at least 2010-2012 [three to five years later], *if ever*." Id. at 1346 (emphasis added). The court reasoned that, under the circumstances, "[t]he residual possibility of a future infringement suit based on [ ] future acts is simply too speculative." Id. (quoting Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1060 (Fed. Cir. 1995)).

      The controversy between the parties in this case is less speculative than in Benitec. In Benitec, the declaratory judgment plaintiff could face an infringement action only if the plaintiff successfully developed the drug, the plaintiff filed a new drug application (which it planned to do years later, if ever), and the FDA approved the application. Here, in contrast, Gen-Connect is currently manufacturing and selling the accused product and intends to continue to manufacture and sell the accused product after December 2017. Moreover, US Carb has expressed its belief that Gen-Connect's product infringes the Patent and has represented that it "aggressively enforces its valuable patent rights." Under these circumstances, granting the motion to dismiss based on US Carb's covenant would amount to a two-year stay on the litigation that would enable US Carb to later initiate suit in a venue and at a time of its choosing. Given US Carb's threat of litigation, such a stay would have a concrete and immediate impact on Gen-Connect— inducing uncertainty as to whether Gen-Connect should continue to grow and expand its current

product line over the next two years.[1]  In considering the totality of the circumstances, the court finds that there is a "substantial controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment."  See MedImmune, Inc., 549 U.S. at 127.

V.     Conclusion

Defendants' Motion to Dismiss Amended Complaint [#21] is ALLOWED IN PART and DENIED IN PART.  As stated in the court's August 10, 2015 Memorandum & Order, Keller's motion to dismiss for lack of personal jurisdiction is ALLOWED.  For the reasons set forth above, US Carb's motion to dismiss for lack of subject matter jurisdiction is DENIED.

IT IS SO ORDERED.

Date:  November 6, 2015

/s/ Indira Talwani
United States District Judge

---

[1] Some courts have expressed concern with patent owners engaging in "extra-judicial patent enforcement with scare-the-customer-and run tactics that infect the competitive environment of the business community with uncertainty and insecurity."  Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 735 (Fed. Cir. 1988); SanDisk Corp., 480 F.3d at 1383.  Dismissal based on temporary covenants not to sue, such as the one in this case, may encourage such tactics.